Eastern District of Kentucky
F I L E D

MAR 25 2019

AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION
### AT ASHLAND

**CIVIL ACTION NO. 13-96-HRW-CJS**

**QUENTIN J. THOMPSON**                                          **PLAINTIFF**

v.               **MEMORANDUM OPINION AND ORDER**

**MIDLAND FUNDING, LLC**                                        **DEFENDANT**

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Defendant Midland Funding, LLC's ("Midland")

Motion for Summary Judgment [Docket No. 69] and Plaintiff Quentin Thompson's Cross

Motion for Summary Judgment [Docket No. 71].[1] Thompson claims that Midland violated two

provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692f(1) and

1692e(5), by suing him in state court to collect credit card debt after the statute of limitations had

lapsed under Kentucky law. [*See* Docket No. 59]. All briefing is complete, and both Motions

for Summary Judgment are ripe for adjudication. For the reasons set forth herein, Midland's

Motion for Summary Judgment will be denied and Thompson's Motion for Summary Judgment

will be granted.

### I.    PROCEDURAL HISTORY

In Thompson's First Amended Class Action Complaint filed on June 6, 2017, he asserts

that Midland violated § 1692f(l) of the FDCPA "by bringing suit and/or sending a dunning

---

[1] For ease of reference, the combined filings and sealed filings docketed separately in the record
will be hereinafter referred to by the first entry in the record. For example, Plaintiff's combined Response
to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment docketed at
Nos. 71, 73, and 74 will be referred to herein as "[Docket No. 71]."

communications on a claim that is barred by the applicable statute of limitations" and that Midland violated 15 U.S.C. § 1692e(5) based on the nearly identical conduct of "filing suit on a debt and/or sending a dunning letter on a claim that is barred by the applicable statute of limitations, or threatening to take legal action on a debt that is barred by the applicable statute of limitations." [Docket No. 59 at ¶ 45(a)-(b)]. The First Amended Class Action Complaint also alleges generally that "Midland Funding, LLC violated multiple sections of the FDCPA by filing suit and sending dunning letters on debt on which it had no documents that supported its claims." [*Id.* at ¶ 45(c)].[2]

Midland filed a Motion for Summary Judgment on April 2, 2018. [Docket No. 69]. Thompson filed a combined Response and Cross Motion for Summary Judgment as to Defendant's Liability on the Merits on April 25, 2018. [Docket No. 71]. Midland filed a combined Reply in Support of its Motion for Summary Judgment and Response to Plaintiff's Cross Motion for Summary Judgment on May 21, 2018. [Docket No. 78]. Thompson filed a Reply in Support of his Cross Motion on May 31, 2018. [Docket No. 83]. Finally, Midland filed a Motion for Leave to File Sur-Reply on June 14, 2018 [Docket No. 85] to which Thompson filed objections [Docket No. 86].[3] Thompson filed his Complaint individually and as a class action on behalf of all others similarly situated; however, Thompson has not yet renewed his motion for class certification following the Court's March 31, 2015 Order denying Plaintiff's Motion for Class Certification without prejudice. [Docket No. 38; *see also* Docket No. 58]. The

---

[2] Thompson abandons any claims against Midland based on the sending of dunning letters in his Reply Memorandum in Support of Plaintiff's Cross Motion for Summary Judgment. [Docket No. 84 at 1-2].

[3] Because the Court finds no meritorious reason to deny Midland's Motion for Leave to File Sur-Reply [Docket No. 85], Midland's Motion will be granted and its Sur-Reply was considered by the Court in making its determination as set forth herein.

Sixth Circuit has consistently held that a district court may consider motions for summary judgment prior to class certification when doing so may prevent needless litigation. *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 616 (6th Cir. 2002) (citing *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998)); *see also Jibson v. Mich. Educ. Ass'n-NEA*, 30 F.3d 723, 734 (6th Cir. 1994) (citing *Marx v. Centran Corp.*, 747 F.2d 1536, 1552 (6th Cir.), *cert denied*, 471 U.S. 1125 (1984)).

As an initial matter, Midland suggests that Thompson's Cross Motion for Summary Judgment should be denied as untimely. [*See* Docket No. 78 at 15 n.4]. Midland correctly points out that the deadline for dispositive motions was extended to April 2, 2018 [Docket No. 68], on which date Midland filed its Motion for Summary Judgment [Docket No. 69]. Thompson did not file his Cross Motion for Summary Judgment until April 25, 2018, in conjunction with Plaintiff's Response to Defendant's Motion for Summary Judgment. [Docket No. 71]. Although Thompson's Motion for Summary Judgment was not filed by the dispositive motions deadline, the Court will nevertheless consider the motion, because there is no evidence Thompson acted in bad faith or that Midland was prejudiced by the delay. *See Great Am. Ins. Co. v. United States*, 552 F. Supp. 2d 703, 706 (S.D. Ohio 2008); *Jones v. L&G Trucking, LLC*, No. 15-40-DLB-HAI, 2017 WL 1173937, at *2 (E.D. Ky. Mar. 29, 2017). The arguments raised in Thompson's Cross Motion overlap significantly with the substance of Thompson's Response to Midland's Motion for Summary Judgment. In addition, an Agreed Order granted Midland an extension of time in which to file its consolidated Reply and Response to Plaintiff's Cross Motion. [Docket No. 77].

## II.    FACTUAL BACKGROUND

The relevant facts are undisputed. Prior to 2002, Thompson obtained a credit card from

Spiegel Inc., operated through Spiegel's wholly-owned subsidiary, First Consumers National

Bank ("FCNB"). [Docket No. 59 at 2]. The credit card could only be used at Spiegel's Newport

News stores and websites. [*Id.*]. The last payment made on the account was made on June 30,

2002. [Docket No. 71 at 5]. A debt was incurred on the account, which FNCB "charged off" on

or around February 9, 2003. [*Id.* at 5-6]. Defendant Midland then purchased the debt from

Spiegel on or around December 4, 2007. [*Id.* at 6]. Thereafter, Midland Credit Management

("MCM") serviced Plaintiff's account for Midland. [Docket No. 69 at 9].[4]

Between January 2008 and December 2011, MCM sent nine letters to Thompson,

attempting to collect the debt. [Docket No. 71 at 6]. On or around March 11, 2012, MCM sent

the account to the law firm Morgan & Pottinger, P.S.C. for review and consideration of a

potential lawsuit. [*Id.*; Docket No. 69 at 11]. Midland filed a collection action in the Lawrence

County, Kentucky District Court on August 7, 2012. [Docket No. 71 at 6].[5] Thompson moved

for judgment on the pleadings, arguing that the lawsuit was time-barred under Kentucky's five-

year statute of limitations for contracts not in writing pursuant to Kentucky Revised Statute

("KRS") § 413.90(2). [*Id.*]. At some point in the litigation, Midland moved for voluntary

dismissal without prejudice. [R. 69 at 106]. The Lawrence District Court granted Thompson's

motion for judgment on the pleadings and dismissed the case *with prejudice* on May 21, 2013.

[*Id.*; Docket No. 69 at 112].

---

[4] Although Thompson denies that the account in question belongs to him, the FDCPA defines "consumer" as "any natural person obligated or *allegedly* obligated to pay any debt." 15 U.S.C. § 1692a (emphasis added); [Docket No. 71 at 27].

[5] *See Midland Funding, LLC v. Quentin J. Thompson*, No. 12-C-00240.

4

## III. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(1). A court must look to the substantive law to identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating cross motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the nonmoving party." *Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co. of Ohio*, 133 F.3d 955, 958 (6th Cir. 1998) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)). Summary judgment is appropriate if the moving party demonstrates there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the initial burden of showing there is no genuine issue of material fact is on the moving party, once the moving party has met its burden, the opposing party must demonstrate that there is sufficient evidence on which the jury could find for the nonmoving party. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Summary judgment should be granted unless a court finds "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Brown v. Chapman*, 814 F.3d 447, 464 (6th Cir. 2016). Based on the undisputed facts cited above and the fact that Midland does not dispute the state court's finding that its collections action against Thompson was time-barred, the Court finds no material facts in dispute and rules on the motions for summary judgment as a matter of law. [Docket No. 69 at 7; *Id.* n.3].

## B.    The FDCPA

Congress passed the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Because the FDCPA is a strict liability statute, a plaintiff need not prove knowledge or intent, nor does a plaintiff have to have suffered actual damages. *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448-49 (6th Cir. 2014). "Strict liability places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief." *Id.* at 449. When determining whether a debt collector's conduct has violated the FDCPA, courts consider the alleged conduct "through the lens of the 'least sophisticated consumer'—the usual objective legal standard in consumer protection cases." *Id.* at 450 (quoting *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007)). The least sophisticated consumer standard operates as follows:

> 'The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.' [*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).] 'This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes.' *Id.* at 1319. The standard thus serves a dual purpose: 'it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.' *Id.* at 1320.

*Id.* at 450-51 (quoting *Gionis*, 238 F. App'x at 28). In addition, only a single violation need be shown to recover under the FDCPA. *Mann v. Acclaim Fin. Servs.*, 348 F. Supp. 2d 923, 926 (S.D. Ohio 2004).

Thompson has sufficiently alleged that he is a "consumer" within the meaning of the FDCPA, that the debt arose for personal, family, or household purposes, and that Midland is a "debt collector" under the Act; all of which Midland does not dispute. [Docket No. 71 at 25-28]. Thus, the alleged conduct falls within the scope of the FDCPA. *See* 15 U.S.C. §§ 1692(e), 1692a(3), 1692a(5)-(6). Thompson's First Amended Complaint specifically alleges that by filing a time-barred collection action in state court, Midland violated 15 U.S.C. §§ 1692f(1) and 1692e(5). [Docket No. 59 at 7]. The "general ban" under § 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." Section 1692f goes on to provide a non-exhaustive list of specific conduct falling under this general prohibition. The subsection Plaintiff relies upon, 1692f(1), prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Section 1692e is structured in the same way, prohibiting generally the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," with § 1692e(5) specifically prohibiting "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

## C.    Filing a time-barred lawsuit constitutes a violation of the FDCPA.

Although the Sixth Circuit has not yet addressed the question of whether filing a collection lawsuit outside of the statute of limitations constitutes a violation of the FDCPA, several courts have found that a debt collector violates the FDCPA when it files a collection action that it knew or should have known was time-barred. *See, e.g.*, *Hall v. LVNV Funding, LLC*, No. 3:13-CV-00399-H, 2013 WL 5550838, at \*2 (W.D. Ky. Oct. 8, 2013) ("Generally, a violation is found when the debt collector knew or should have known the lawsuit was time

7

barred."); *see also Conway v. Portfolio Recovery Assocs., LLC*, 13 F. Supp. 3d 711, 714 (E.D.

Ky. 2014); *Duffey v. Pope*, No. 2:11-cv-16, 2012 WL 4442753, at *5 (S.D. Ohio Sept. 25, 2012);

*Jackson v. Midland Funding, LLC*, 754 F. Supp. 2d 711, 714-16 (D.N.J. 2010), *aff'd*, 468 F.

App'x 123 (3d Cir. 2012); *Dudek v. Thomas & Thomas Attys. & Counselors at Law, LLC*, 702 F.

Supp. 2d 826, 833 (N.D. Ohio 2010); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870,

873, 881 (N.D. Ill. 2009); *Deere v. Javitch*, 413 F. Supp. 2d 886, 890-91 (S.D. Ohio 2006);

*Dunaway v. JBC Assocs., Inc.*, No. 03-7397, 2005 WL 1529574, at *4 (E.D. Mich. June 20,

2005); *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987).[6]

Midland does not dispute that filing a time-barred lawsuit violates the FDCPA.

Moreover, Midland does not seek to relitigate the Lawrence District Court's finding that

Midland's collection action against Thompson was time-barred. [Docket No. 69 at 7; *Id.* n.3

(citing *Hall*, 2013 WL 5550838, at *3]. Instead, Midland seeks summary judgment on the

grounds that the conduct alleged (filing a time-barred lawsuit) does not constitute a violation of

the specific subsections of the FDCPA that Thompson relies upon in his Complaint, 15 U.S.C.

§§ 1692f(l) and 1692e(5). [*See* Docket No. 69 at 5-6]. More specifically, Midland asserts that §

1692f(l), which prohibits the collection of an "amount" that is not "expressly authorized by the

agreement creating the debt or permitted by law," does not apply in this case, as Thompson does

not dispute the amount of the alleged debt at issue. [*Id.*]. Similarly, Midland argues that §

1692e(5), which prohibits "the threat to take any action that cannot legally be taken" is

---

[6] *See also Midland Funding, LLC v. Johnson*, 137 S.Ct. 1407, 1413 (2017) (acknowledging precedent finding that a debt collector's assertion of a claim known to be time-barred constitutes a violation of the FDCPA, while not addressing the issue) (citing *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013); *Kimber*, 668 F. Supp. at 1487; *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32-33 (3d Cir. 2011); *Castro v. Collecto, Inc.*, 634 F.3d 779, 783 (5th Cir. 2011); *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001)).

inapplicable because Midland did not *threaten* Thompson, but rather, took action by filing the collection lawsuit. [*Id.* at 6].

In response, Thompson attempts to distance himself from having relied upon these two particular subsections, asserting generally that "there can be no doubt that Plaintiff has stated a cause of action under §§ 1692e and e(5), as well as § 1692f." [Docket No. 71 at 11; *see also* Docket No. 71 at 29 ("Filing a lawsuit to collect a debt against a consumer outside the applicable statute of limitations violates the FDCPA.")]. It is well-established that filing a time-barred lawsuit violates one or multiple provisions of §§ 1692e and 1692f. However, which particular section or sections this conduct violates is unclear. Of the many cases cited above in which courts have recognized an FDCPA violation based on the filing of a time-barred lawsuit, some rely on one or both of the general provisions §§ 1692f and 1692e. *See, e.g.*, *Kimber*, 668 F. Supp. at 1488; *Herkert*, 655 F. Supp. 2d at 873, 881. Others cite to a specific subsection, including §§ 1692e(2) and 1692e(5). *See, e.g., Deere*, 413 F. Supp. 2d at 890-91 (finding that filing a time-barred lawsuit "clearly falls" under § 1692e(2) and possibly also under § 1692f); *Jackson*, 754 F. Supp. 2d at 714, 174 n.6 (relying on §§ 1692f and 1692e(5)); *Dudek*, 702 F. Supp. 2d at 833 (citing to §§ 1692e, 1692e(2)(A), and 1692f); *see also Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 332 (6th Cir. 2006) (noting "that courts in other circuits have held that the filing of a lawsuit to collect a debt that is barred by the statute of limitations violates several subsections of 15 U.S.C. § 1692e . . . .").

The plaintiffs in *Hall v. LVNV Funding, LLC* and *Conway v. Portfolio Recovery Associates, LLC* both relied on the same subsections cited by Thompson, §§ 1692f(1) and 1692e(5), to assert an FDCPA violation based on defendants' filing of time-barred collection actions, with both cases surviving motions to dismiss. *Hall*, 2013 WL 5550838, at *2; *Conway*,

13 F. Supp. 3d at 714. However, in each case, the defendants' challenges related to which statute of limitations applied, rather than the plaintiffs' reliance on §§ 1692e(5) and 1692f(1). *Id.* Thus, the court did not assess whether the particular subsections were appropriate in either case.

### D.     Summary judgment in favor of Plaintiff should be granted under § 1692e(5).

Filing a time-barred lawsuit to collect a debt falls within the confines of § 1692e(5), which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." In *Stratton v. Portfolio Recovery Associates*, the Sixth Circuit ruled that a debt collector's act of filing a lawsuit to collect statutory prejudgment interest it was not legally entitled to constituted a "threat" under § 1692e(5). *Stratton*, 770 F.3d 443 (6th Cir. 2014). The district court in *Stratton* had held that the lawsuit was an action and not a "threat," reasoning that applying § 1692e(5) "not only to threats of action but the action itself . . . would impermissibly expand the plain language of the statute." *Stratton v. Portfolio Recovery Assocs.*, No. 5:13-147-DCR, 2013 WL 6191804, at *7 (E.D. Ky. 2013).

The Sixth Circuit reversed, holding that because the debt collector did not have a right to collect the prejudgment interest, filing a lawsuit to collect the interest was a "threat . . . to take action that cannot legally be taken" under the least sophisticated consumer standard. *Stratton*, 770 F.3d at 451. The court cited to its then recent opinion in *Currier*, which found that "complaints, liens, and other '[c]ourt filings can be a threat under the FDCPA.'" *Id.* (quoting *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) ("The alleged conduct of filing and maintaining an invalid lien for a month can also fairly be characterized as a threat to take an action that cannot legally be taken within the meaning of § 1692e(5).")). In *Currier*, the Sixth Circuit explained that "[t]he fact that the threat appears in a lawsuit or other court filing does not diminish the threatening nature of the communication for purposes of the FDCPA."

762 F.3d at 535. The court further clarified that "actions" and "threats" "are not necessarily mutually exclusive concepts." *Id.* at 536 (citing *Gionis*, 238 F. App'x at 28-29). Thus, the Sixth Circuit has denounced the technical interpretation of § 1692e(5) that Midland promotes in its briefing, remarking in *Gionis*:

> [W]hen we keep the Act's overarching principles in mind—'to eliminate abusive debt collection practices by debt collectors,' § 1692(e), and to prevent 'false, deceptive, or misleading representation[,]' § 1692e—whether the Affidavit's metaphysical description is more an 'attempt' or more a 'threat' is essentially wordplay. No semantical recasting alters the intimidating effect on the least sophisticated consumer: that she 'would be confused, and reasonably might feel pressured to immediately pay the debt . . .' *Gionis v. Javitch*, 405 F. Supp. 2d 856, 867 (S.D. Ohio 2005).

*Gionis*, 238 F. App'x at 28-29.

Midland's act of filing a lawsuit to collect time-barred debt constituted a "threat" to the least sophisticated consumer in the same way that the Sixth Circuit in *Stratton* found the filing of a lawsuit to collect prejudgment interest the debt collector was not legally entitled to constituted a threat. The comparison is not diminished by the fact that the running of the statute of limitations does not extinguish the debt collector's right to the debt, merely restricting its ability to enforce the debt through the courts. *See, e.g.*, *Griffith v. Northland Grp., Inc.*, 2014 WL 12607101, at *2 n.15 (W.D. Tenn. 2014) (citing *Freyermouth.*, 248 F.3d at 771 ("in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid."). As discussed above, courts widely recognize that filing a time-barred lawsuit violates the FDCPA. *See Hall*, 2013 WL 5550838, at *3. By filing a time-barred lawsuit, Midland threatened to pursue the time-barred debt via litigation, which it was not lawfully permitted to do under the FDCPA.

That Midland moved for default judgment in the state collection action and then moved for voluntary dismissal after Thompson appeared exemplifies "the reality of the debt collection business, where some debt collectors . . . opt[] to file lawsuits against debtors en masse in an effort to collect enforceable default judgments." *Stratton*, 770 F.3d at 451-52 (internal quotations omitted) (citing *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1256 (11th Cir. 2014) ("A deluge has swept through U.S. bankruptcy courts of late. Consumer debt buyers . . . are filing proofs of claim on debts deemed unenforceable under state statutes of limitations."); [Docket No. 69-4 at 22, 23]. The rationale for prohibiting debt collectors from suing in court to collect time-barred debt rather than simply relying on consumers to raise the statute of limitations as an affirmative defense is also described in *Kimber v. Federal Financial Corporation*:

> As with any defendant sued on a stale claim, the passage of time not only dulls the consumer's memory of the circumstances and validity of the debt, but heightens the probability that she will no longer have personal records detailing the status of the debt. Indeed, the unfairness of such conduct is particularly clear in the consumer context where courts have imposed a heightened standard of care—that sufficient to protect the least sophisticated consumer. Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court to present the defense; this is particularly true in light of the costs of attorneys today.

668 F. Supp. at 1487; *see also Phillips*, 736 F.3d at 1079.

When the district court in *Stratton* assessed the cross motions for summary judgment on remand, the court's analysis with respect to the § 1692e(5) claim went as follows: defendant's "liability hinges on whether it had the right to collect prejudgment interest . . . . Without the right to collect prejudgment interest . . . the company would have threatened to take action that could

not legally be taken." *Stratton*, 171 F. Supp. 3d 585, at 602-03 (E.D. Ky. 2016). In the present case, Midland has conceded, based on the state court's grant of Thompson's motion for judgment on the pleadings, that the collection lawsuit it filed against Thompson was time-barred. [Docket No. 69 at 7; *Id.* n.3]. Thus, because Midland could not lawfully pursue the collection against Thompson in court, the lawsuit constituted a threat to take action that could not lawfully be taken under the FDCPA. As a result, summary judgment in favor of Thompson should be granted under § 1692e(5).

Midland cites to *Brown v. LVNV Funding, LLC*, No. 5:14-152-DCR, 2014 WL 4986524 (E.D. Ky. Oct. 6, 2014), in which the court held that filing a lawsuit to collect debt owed plus interest did not constitute a "threat" within the meaning of § 1692e(5). [*See* Docket No. 69 at 6]. However, *Brown* was decided less than one month shy of the Sixth Circuit's ruling in *Stratton*, and, based on the holding of *Stratton*, *Brown* is not persuasive. Nor does the Court find the out-of-circuit cases cited by Midland on this issue persuasive in light of the binding authority from the Sixth Circuit.

### E.     Plaintiff's claim does not fall under § 1692f(1).

One set of conduct may violate multiple provisions of the FDCPA. *See Currier*, 762 F.3d at 536 ("A debt collector's action could be 'misleading' under § 1692e, 'unfair' under § 1692f, or, as alleged here, both"). However, in this instance, the Court finds that Midland's conduct of filing a time-barred collections action does not fall within the parameters of the second provision Thompson relies upon, § 1692f(1). Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." As Midland points out, courts have widely found that application of § 1692f(1) is limited to

situations where the plaintiff is challenging the *amount* of the debt sought to be collected, rather than the overall validity of the debt or method of collection. *See Wilson v. Asset Acceptance, LLC*, 864 F. Supp. 2d 642, 645 (E.D. Ky. 2012) ("Because Plaintiff does not allege that Defendant sought to collect an amount greater than that owed, he has failed to state a claim under § 1692f(1).") (citing *Taylor v. Midland Credit Mgmt, Inc.*, No. 1:07-cv-582, 2008 WL 544548, at *4 (W.D. Mich. Feb. 26, 2008) ("[B]y its terms § 1692f(1) addresses the abusive practice of collecting an amount greater than that which is owing," thus, "where the amount being collected by the collection agency was not different than the amount owed, § 1692f(1) was inapplicable to the plaintiff's claim . . . ."); *see also Cetak v. Nat'l Credit Adjusters, LLC*, 2017 U.S. Dist. LEXIS 51230, at *6 (D. Neb. Apr. 4, 2017) (collecting cases). Because Thompson does not challenge the amount of the debt owed, but rather, challenges Midland's act of filing a time-barred lawsuit to collect the debt in its entirety, § 1692f(1) is inapplicable.

In response, Thompson points to *Stratton* as an example of a case where the court found a challenge to the collection of debt to fall under § 1692f(1). In particular, Thompson quotes the following sentence: "PRA's state court suit is an 'attempt' to collect an 'amount'--$2,630.95 plus 8% interest--that is neither 'expressly authorized' by any agreement in the record nor 'permitted by law.'" [Docket No. 71 at 8 (quoting *Stratton*, 770 F.3d at 451)]. However, upon review of the circumstances of that case, the plaintiff in *Stratton* was challenging the amount owed— arguing defendant was not entitled to collect eight percent interest in addition to the base amount of debt. *Stratton*, 770 F.3d at 446. Moreover, although Thompson claims the Sixth Circuit's *Currier* opinion is on point [Docket No. 71 at 11-12], the court in *Currier* did not reach the question of liability under § 1692f(1), stopping short of doing so after finding a violation under the broader provision cited by the plaintiff, § 1692f. *Currier*, 762 F.3d at 35 ("Currier has

plausibly alleged an unfair debt collection practice under the broad meaning of § 1692f.

Accordingly, it is unnecessary to go into the details of whether the practice is also unfair because

it is an attempt to collect an amount not authorized by the credit card agreement.").

## F. Defendant is not entitled to the bona fide error defense.

In addition, Midland argues summary judgment in its favor is appropriate because even if

Midland violated some provision of the FDCPA by filing a collection suit outside the statute of

limitations, the bona fide error defense applies, absolving it of liability. [Docket No. 69 at 24].

The FDCPA provides a safe harbor provision for violators of the FDCPA known as the "bona

fide error defense" which states that:

> A debt collector may not be held liable in any action brought under this
> subchapter if the debt collector shows by a preponderance of evidence that the
> violation was not intentional and resulted from a bona fide error notwithstanding
> the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). To qualify for this defense, a debt collector must show by a

preponderance of the evidence that (1) the violation was unintentional, (2) that it was the result

of a bona fide error, and (3) that the debt collector maintained procedures to avoid the error.

*Currier*, 762 F.3d at 537 (6th Cir. 2014) (citing *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d

606, 614 (6th Cir. 2009)). Midland asserts that it is entitled to the protection of this provision

because it inadvertently filed the time-barred lawsuit due to conflicting state law on the issue.

[Docket No. 69 at 35]. Midland cites to a federal district court case commenting on the unsettled

state of Kentucky law with respect to the statute of limitations for credit card agreements,

asserting that based on Kentucky precedent at the time the collection suit was filed against

Thompson, Midland "reasonably believed" the fifteen-year statute of limitations for written

contracts applied to Thompson's credit card agreement, rather than the five-year statute of

limitations for unwritten contracts. [Docket No. 69 at 4, 24-2 (citing *Faulk v. LVNV Funding*

15

*LLC*, 55 F. Supp. 3d 967, 972 (E.D. Ky. 2014))]. In addition, Midland describes at length the procedures in place to avoid filing time-barred lawsuits, which in this case involved sending the file to a Kentucky law firm for a determination of the statute of limitations. [*Id.* at 26-28]. In response, Thompson argues that the bona fide error defense is inapplicable to mistakes of state law. [Docket No. 71 at 14-15]. The Court agrees with Plaintiff that the bona fide error defense is not available to Midland based on its mistaken understanding of Kentucky law.

In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, the Supreme Court overturned the Sixth Circuit to hold that the bona fide error defense provided by § 1692k(c) is not available to debt collectors who misinterpret the legal requirements of the FDCPA. *Jerman*, 559 U.S. 573, 557-58 (2010). However, the Court expressly reserved judgment on whether the bona fide error defense is available to debt collectors who violate the FDCPA based on a mistake of state law. *Jerman*, 559 U.S. at 581, n.4 ("The parties disagree about whether § 1692k(c) applies when a violation results from a debt collector's misinterpretation of the legal requirements of state law or federal law other than the FDCPA . . . . Because this case involves only an alleged misinterpretation of the requirements of the FDCPA, we need not, and do not, reach those other questions.").

Following the Supreme Court's opinion in *Jerman*, some district courts in the Sixth Circuit have extended the Court's reasoning to find the bona fide error defense inapplicable to mistakes of state law in addition to mistaken interpretations of the FDCPA. *See Verburg v. Weltman, Weignberg & Reis Co., L.P.A.*, 295 F. Supp. 3d 771, 774 (W.D. Mich. 2018); *Harden v. Autovest, L.L.C.*, No. 1:15-cv-34, 2016 WL 6997905, at *2 (W.D. Mich. Nov. 30, 2016); *Moxley v. Pfundstein*, No. 1:10-cv-2912, 2012 WL 4848973, at *4 (N.D. Ohio Oct. 11, 2012). Other courts, including the Eastern District of Kentucky, have continued post-*Jerman* to find that

the bona fide error defense covers debt collectors who violate the FDCPA because of a mistaken interpretation of state law. *See Stratton v. Portfolio Recovery Assocs., LLC*, 171 F. Supp. 3d 585 (E.D. Ky. 2016); *aff'd*, 706 F. App'x 840 (6th Cir. 2017) (affirming lower court's finding of no FDCPA violation without discussing the bona fide error defense); *Newton v. Portfolio Recovery Assocs., LLC*, No. 2:12-cv-698, 2014 WL 340414, at \*6 (S.D. Ohio Jan. 30, 2014); *Durthaler v. Accounts Receivable Mgmt.*, 854 F. Supp. 2d 485, 493 (S.D. Ohio 2012); *Rice v. Javitch Block & Rathbone, LLP*, 2011 WL 3861701, at \*7-8 (S.D. Ohio Aug. 31, 2011). While the Sixth Circuit has not yet provided binding authority on this issue, it has provided some guidance suggesting that the logic of *Jerman* extends to mistakes of state law stating, "[t]he Supreme Court declined to address whether the defense is available for mistakes of law other than the FDCPA itself, but the discussion of the affirmative defense makes clear that mistakes of state law can give rise to liability." *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713 (6th Cir. 2015) (internal citation omitted).

Without binding precedent from the Sixth Circuit, the Court finds persuasive the approach taken by the Western District of Michigan to extend the reasoning of the Supreme Court in *Jerman* to mistakes of state law. *See Verburg*, 295 F. Supp. 3d at 774; *Harden*, 2016 WL 6997905, at \*2 (finding bona fide error defense unavailable for mistaken interpretation of state statute of limitations); *see also New Gemini Capital Grp.*, 859 F. Supp. 2d 990 (S.D. Iowa 2012) (finding bona fide error defense inapplicable for mistaken understanding of statute of limitations where state law unsettled at time of collection action). The Supreme Court's rationale for restricting a debt collector from taking advantage of the bona fide error defense for mistakes of law concerning the FDCPA applies equally to restrict Midland from taking

advantage of the defense based on its misinterpretation of the Kentucky statute of limitations. In

*Jerman*, the Supreme Court relied on the following justifications:

(1) "the common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally," *Jerman*, 559 U.S. at 581 (quoting *Barlow v. United States*, 32 U.S. 404, 7 Pet. 404, 411, 8 L. Ed. 728 (1833)).

(2) "[W]hen Congress has intended to provide a mistake-of-law defense to civil liability, it has often done so more explicitly than [under the FDCPA]." *Id.* at 583.

(3) "Congress also did not confine liability under the FDCPA to 'willful' violations, a term more often understood in the civil context to excuse mistakes of law." *Id.* at 584.

(4) The statutory phrase "procedures reasonably adapted to avoid any such error" is "more naturally read to apply to processes that have mechanical or other such 'regular orderly' steps to avoid mistakes," and "legal reasoning is not a mechanical or strictly linear process." *Id.* at 587.

(5) "[T]he uniform interpretations of three Courts of Appeals holding that the TILA defense does not extend to mistakes of law." *Id.* at 591.

(6) "[N]onlawyer debt collectors could obtain blanket immunity for mistaken interpretations of the FDCPA simply by seeking the advice of legal counsel." *Id.* at 602.

(7) Concern over an "enforcement gap" under a contrary reading, where "consumers will have little incentive to bring enforcement actions where the law is at all unsettled, because in such circumstances a debt collector could easily claim bona fide error of law." *Id.* at 603 (internal quotations omitted).

*Verburg*, 295 F. Supp. 3d at 774.[7]

---

[7] In addition, although several courts that have found the FDCPA violation of filing a time-barred collections lawsuit occurs when the defendant "knew or should have known" the statute of limitations has elapsed, *see, e.g., Hall*, 2013 WL 5550838, at *2, following *Jerman*, this knowledge requirement cannot be understood to mean a knowledge or understanding of the law. Allowing a defendant to assert a lack of understanding of the law upfront would circumvent the unavailability of the bona fide error defense for such mistakes of law. *Duffey v. Pope*, No. 2:11-cv-16, 2012 WL 4442753, at *13 (S.D. Ohio Sept. 25, 2012). Here, Midland only asserts lack of understanding of the law in the context of the bona fide error defense.

Midland presents no substantive arguments to contradict this holding, and the Court finds the cases cited by Midland less persuasive. Unlike in *Verburg* and *Harden*, the cases cited by Midland as having found the bona fide error defense applicable to mistakes of state law post-*Jerman* do not provide any analysis for doing so. *See Stratton*, 171 F. Supp. 3d 585, 603-04; *Newton, LLC*, 2014 WL 340414, at *6; *Durthaler*, 854 F. Supp. 2d at 493. In addition, although the court in each case states that the defense is applicable to mistakes of law generally, the courts did so only in dicta. *Id.* For instance, in *Stratton*, the court stated that the bona fide error defense "applies to both mistakes of state law and clerical errors" in dicta, as the court found defendant did not violate the FDCPA. *Stratton,* 171 F. Supp. 3d at 603. While the court entertained the defendant's bona fide error defense in the alternative, it found the defendant failed to meet all of the criteria for the defense. *Id.* at 603-04.[8] Similarly, in *Newton*, another case cited by Midland, the court found the "bona fide error defense applies to mistakes of law as well as to clerical errors" but went on to hold that defendant's conduct did not violate the FDCPA. *Newton*, 2014 WL 340414, at *12. Furthermore, the *Newton* court cites to a prior case, *Durthaler v. Accounts Receivable Management*, which also found "the bona fide error defense applies to mistakes of law as well as to clerical errors." *Newton*, 2014 WL 340414, at *6 (citing *Durthaler*, 854 F. Supp. 2d at 493). Yet, the court in *Durthaler* relied on the Sixth Circuit opinion in *Jerman*, which was overruled by the Supreme Court, without acknowledging that precedent. 854 F. Supp. 2d at 493. Additionally, *Durthaler* involved a mistake of fact (mistakenly neglecting to identify as a debt collector in two voicemails), and so, as in *Stratton* and *Newton*, the statement in *Durthaler* that the bona fide error defense applies to mistakes of law was dicta. *Id.*

---

[8] The definition of "obiter dictum" or "dicta" is "a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 201 n.8 (6th Cir. 2016) (citing Black's Law Dictionary (10th ed. 2014)).

Midland relies heavily on *Gray v. Suttell & Associates*, a case out of the Western District of Washington involving the same defendant, Midland Funding, and a debt incurred on a Spiegel credit card issued by FCNB. *Gray*, 123 F. Supp. 3d 1283 (E.D. Wash. 2015). The court in *Gray* found the bona fide error defense absolved the defendant from liability under the FDCPA for having filed a time-barred collections suit, noting a "trend . . . toward allowing the bona fide error defense where the law is not clear . . ." *Id.* at 1289. However, the caselaw the *Gray* court relies upon predates the Supreme Court's 2010 opinion in *Jerman*. *See Grey*, 123 F. Supp. 3d at 1288-89; *see also Vergburg*, 295 F. Supp. 3d at 775 (distinguishing *Grey* on this basis). Moreover, Midland does not put forth any arguments as to why a lack of clarity in the law renders the justifications cited above in *Jerman* less applicable. Although uncertainty in the law would seem to make a debt collector less culpable, it should be reiterated that the FDCPA contemplates holding debt collectors liable for violations regardless of intent. *Jerman*, 599 U.S. at 584-86; *cf. Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 864 F.3d 492, 494, 498-99 (7th Cir. 2017) (finding a debt collector who relied on circuit court precedent interpreting the FDCPA that was later overruled could not take advantage of the bona fide error defense because otherwise, "the result would be to give 'a competitive advantage to debt collectors who press the boundaries of lawful conduct,' inviting a 'race to the bottom . . .'") (citing *Jerman*, 599 U.S. at 602)).

Defendant cites two additional cases in support of the availability of the bona fide error defense where a debt collector inadvertently seeks to enforce a debt after the statute of limitations has elapsed. [Docket No. 69 at 30 (citing *Charbonneau v. Mary Jane Elliott, P.C.*, 611 F. Supp. 2d 736, 743 (E.D. Mich. 2009); *Moya v. Hocking*, 10 F. Supp. 2d 847, 851 (W.D. Mich. 1998))]. However, both cases are easily distinguishable as involving mistakes of fact or

clerical errors, resulting in miscalculation of the statute of limitations, rather than a misapprehension of the applicable statute of limitations—a mistake of law. *Charbonneau*, 611 F. Supp. 2d at 743 (finding bona fide error defense applicable where defendant relied on an incorrect date of final payment it received from the seller of the plaintiff's debt); *Moya*, 10 F. Supp. 2d at 849, 853 (bona fide error defense applicable where defendants relied on incorrect accrual date to calculate statute of limitations). Accordingly, the Court finds that under the circumstances presented in this case, the bona fide error defense is inapplicable.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** that

1)    Defendant's Motion for Leave to File Sur-Reply [Docket No. 85] is **GRANTED** and Defendant's tendered Sur-Reply [Docket No. 85-1] shall be **FILED** of record;

2)    the Clerk is directed to re-docket the "Sealed Motion" at Docket No. 78 as a "Sealed Reply";

3)    Defendant's Motion for Summary Judgment [Docket No. 69] is **DENIED;** and

4)    Plaintiff's Cross Motion for Summary Judgment as to Defendant's Liability on the Merits [Docket No. 74] is **GRANTED.**

This ⟋ day of March, 2019.



**Signed By:**
*Henry R. Wilhoit, Jr.*
**United States District Judge**

J:\DATA\Orders\civil ashland\2013\13-96-HRW draft MOO re #69, #74.docx

21